IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


MIKE GUTH                                                                     PLAINTIFF


v.                                          NO. 3:15-cv-00135 PSH


CAROLYN W. COLVIN, Acting Commissioner                      DEFENDANT
of the Social Security Administration


## MEMORANDUM OPINION AND ORDER


Plaintiff Mike Guth ("Guth") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Guth maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why, one of which has merit.[1] Guth maintains that his residual functional capacity was not properly assessed. Specifically, he maintains that he has sitting and reaching limitations, and the limitations were not adequately incorporated into the assessment of his residual functional capacity.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).[2]

The medical evidence relevant to Guth's ability to sit and reach reflects that he presented to the Harrisburg Family Medical Clinic in March of 2011 complaining of joint pain. See Transcript at 240-241. He was diagnosed with, inter alia, unspecified joint pain and given medication. He returned to the clinic on at least five other occasions complaining of, inter alia, pain in his shoulder, back, and hip. See Transcript at 238-239 (04-22-2011), 236-237 (06-23-2011), 233-235 (07-28-2011), 231-232 (09-08-2011), 229-230 (10-25-2011). The progress notes indicate that the severity of his pain fluctuated over time. For instance, in a July 28, 2011, progress note, Dr. Vonda Houchin, M.D., ("Houchin") observed that Guth had "right shoulder pain with elevation above 90 degrees, pain with [range of motion], [and] crepitence in joint in shoulder and in right hip." See Transcript at 234. In a September 20, 2011, progress note, it was noted that Guth's pain was better. See Transcript at 252. In an October 25, 2011, progress note, Houchin observed that Guth had a decreased range of motion in his neck. See Transcript at 229. Guth continued to be treated with medication and was once given an injection.

_____

[2]

The ALJ is also required to evaluate the claimant's subjective complaints. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Guth does not challenge the evaluation made of his subjective complaints.

In July of 2011, Guth injured his neck in an automobile accident. <u>See</u> Transcript at 258. He was taken to an emergency room where a CT scan was performed. The results of the CT scan showed no abnormalities. He was prescribed medication and released.

In July of 2011, Guth presented to the NEA Baptist Clinic complaining of continued pain in his neck. <u>See</u> Transcript at 258. A cervix spasm was diagnosed, and he was prescribed medication. He returned to the NEA Baptist Clinic on at least nine other occasions complaining of, <u>inter alia</u>, pain in his neck. <u>See</u> Transcript at 257 (08-01-2011), 256 (08-05-2011), 255 (08-17-2011), 254 (08-31-2011), 253 (09-09-2011), 252 (09-20-2011), 251 (09-27-2011), 244 (10-14-2011), 243 (11-30-2011). An MRI was performed in August of 2011, and the results showed a "small [herniated nucleus pulposus] on the left at C4-C5 compressing C5 root." <u>See</u> Transcript at 264. A CT scan was performed in September of 2011, and the results showed, <u>inter alia</u>, the "[l]oss of cervical lordosis compatible with painful muscle spasm." <u>See</u> Transcript at 297. When he was seen in November of 2011, his range of motion was nevertheless within normal limits.

In April of 2012, Guth was seen at the Jonesboro Church Health Clinic for his complaints of shoulder pain and "progressively worsen[ing]" hip pain. <u>See</u> Transcript at 287. He also complained of pain in his shoulders and elbows. He was found to have a limited range of motion in his right hip. He was diagnosed with arthralgia and right hip pain. He was prescribed medication and referred to an orthopedic clinic.[3]

---

[3]

The record is silent as to whether Guth ever presented to the orthopedic clinic.

In May of 2012, an MRI was taken of Guth's right hip. <u>See</u> Transcript at 294. The results showed a subchondral cyst in the right acetabulum, part of which could extend and connect with the labrum, and a tear of the anterior labrum was suspected.

In August of 2012, Dr. Thomas Jennings, M.D., ("Jennings") performed a consultative examination. <u>See</u> Transcript at 323-326. He found, in part, the following:

> MUSCULOSKELETAL: Range of motion for the upper extremities showed forward extension and abduction at the shoulders only to 120 degrees. … Range of motion for the hip showed flexion to 80 and 85 degrees on the right and left respectively. … Abduction of the hip was limited to 45 degrees bilaterally, internal rotation to 10 degrees. … Upper extremities showed 5/5 strength for flexion and extension about the elbow and shoulders. … I did note that while [Guth] was sitting, he [sat] with his left shoulder elevated to the right to relieve some pressure off of the shoulder.

<u>See</u> Transcript at 325. Jennings' impressions/medical source statement were as follows:

> … Regarding [Guth's] claims of chronic hip and low back pain, this examination does show that he has some limitations in range of motion at the joints of the hip. The studies that he brought with him did provide evidence for cause of this. The straight leg raise test showed discrepancies between the seated and supine positions suggesting a musculoskeletal as opposed to a neurological basis for his low back pain. Regarding his shoulder pain, he did show limitation of elevation in abduction at the shoulders. … Regarding his functional status, based on this examination, I do make findings for limited range of motion at the shoulders most likely as a result of his C4-C5 herniated disc. I also make findings for limitation of range of motion at the hips. He also has decreased strength in the flexors and extensors of the hip. This could impair his ability to walk and [sit] for … prolonged periods of time. … He was not observed lifting. …

<u>See</u> Transcript at 326.

In October of 2012, another MRI was taken of Guth's cervical spine. <u>See</u> Transcript at 357-358. The physician who interpreted the results suspected a small lateral herniation on the left C4-C5 and a small bulge on the left at C5-C6.

In November of 2012, Dr. Samuel Hester, Ph.D., ("Hester") saw Guth for a mental evaluation. <u>See</u> Transcript at 329-337. Hester recorded some of Guth's representations regarding his physical status. Guth reported having chronic pain in his right hip and neck, and the pain causes him to be a miserable person. Hester diagnosed Guth with, <u>inter</u> <u>alia</u>, a pain disorder associated with both medical and psychological factors.

In March of 2013, Guth presented to the emergency room at St. Bernards Medical Center complaining of hip pain. <u>See</u> Transcript at 352-355. He was prescribed medication and released with the recommendation that he see a pain management specialist.

In June of 2013, Guth presented to St. Bernards Medical Center complaining of swelling in and around his left eye. <u>See</u> Transcript at 347-350. The progress note from that examination is noteworthy because he reported "no neck pain or stiffness" and no weakness in any extremity. <u>See</u> Transcript at 347.

In August of 2013, Guth presented to the East Arkansas Family Health Center complaining of hip and shoulder pain. <u>See</u> Transcript at 369-370. He reported a significant loss of weight, which he attributed to a loss of appetite caused by severe hip pain. Hip pain was diagnosed, and he was prescribed medication. He returned two weeks later and reported that he continued to experience hip and shoulder pain. <u>See</u> Transcript at 366-367. Joint pain was again diagnosed, and he was continued on medication.

The ALJ found that Guth's severe impairments include degenerative disc disease of the cervical spine. The ALJ assessed Guth's residual functional capacity and found that he is capable of performing sedentary work, albeit with the following additional exertional limitations: "[Guth] could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, sit for approximately six hours in an eight-hour workday, and walk or stand no more than two hours in an eight-hour workday." See Transcript at 15. The ALJ did not craft a residual functional capacity assessment that included a limitation on Guth's ability to reach. In making the foregoing findings, the ALJ relied, in part, upon Jennings' opinions, observing that Jennings' opinions support the ALJ's assessment of Guth's residual functional capacity. The ALJ found at step four that Guth is unable to perform any of his past relevant work. The ALJ found at step five, though, that Guth is capable of performing other jobs. The ALJ identified the other jobs as ceramic tile inspector and "food and beverage [telephone] order clerk." See Transcript at 20.

The question for the Court is whether substantial evidence on the record as a whole supports the ALJ's findings. Although Guth bears the burden of proving his residual functional capacity, which is an administrative determination reserved for the ALJ, see Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007), there must be some medical evidence to support the assessment. On the record now before the Court, it cannot be said that the assessment of Guth's residual functional capacity is supported by some medical evidence. The Court so finds for two reasons.

First, it is not clear what medical evidence supports the ALJ's finding that Guth can sit for approximately six hours in an eight-hour workday. Testing revealed an explanation for Guth's hip pain, and the medical professionals who examined him appear to have believed him to be experiencing significant hip pain. Jennings opined that Guth has "some limitations" in his range of motion at his hips, limitations Jennings believed "could" impair Guth's ability to sit for prolonged periods. Sadly, Jennings' opinions are not a model of definitiveness and cry out for clarification, but they do support the proposition that Guth has significant hip pain. The critical question is the degree to which Guth experiences hip pain, particularly because he is limited to sedentary work, and additional medical evidence would be helpful.

Second, it is not clear why the ALJ refused to incorporate a reaching limitation into the assessment of Guth's residual functional capacity. The medical evidence indicates that Guth has reaching limitations caused, in part, by a "small lateral herniation on the left C4-C5 and a small bulge on the left at C5-C6." The medical professionals who examined him appear to have believed him to be experiencing significant pain in and around his neck. The ALJ stated that Jennings' opinions support the assessment of Guth's residual functional capacity. The ALJ, though, ignored Jennings' opinion that Guth has a limited range of motion at his shoulders, and the ALJ failed to explain why he chose to ignore that portion of Jennings' opinions. It is important to ascertain the extent to which Guth has a reaching limitation because the jobs identified by the ALJ require frequent reaching.

-7-

Given the foregoing, a remand is necessary. Upon remand, the ALJ shall re-assess Guth's residual functional capacity. As a part of doing so, the ALJ shall re-evaluate the medical evidence and, if necessary, send Guth for another consultative examination.

The Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Guth.

IT IS SO ORDERED this 11th day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE